**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – LANSING**

| | |
|---|---|
| INTERVARSITY CHRISTIAN FELLOWSHIP/USA, and INTERVARSITY CHRISTIAN FELLOWSHIP WAYNE STATE UNIVERSITY CHAPTER, | Civil Action No. _____ |
| *Plaintiffs*, | **ORIGINAL COMPLAINT** |
| v. | |
| BOARD OF GOVERNORS OF WAYNE STATE UNIVERSITY, GOVERNOR RICHARD SNYDER, ATTORNEY GENERAL WILLIAM SCHUETTE, DIRECTOR AGUSTIN ARBULU, ROY WILSON, SANDRA HUGHES O'BRIEN, DAVID A. NICHOLSON, MICHAEL BUSUITO, DIANE DUNASKISS, MARK GAFFNEY, MARILYN KELLY, DANA THOMPSON, KIM TRENT, DAVID STRAUSS, and RICARDO VILLAROSA, | |
| *Defendants*. | |

Daniel P. Dalton
Dalton & Tomich PLC
The Chrysler House
719 Griswold Street, Suite 270
Detroit, Michigan 48226
(313) 859-6000
(313) 859-8888
*ddalton@daltontomich.com*

Lori H. Windham*
Eric C. Rassbach*
Daniel H. Blomberg*
Daniel Ortner*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC, 20036
(202) 955-0095 phone
(202) 955-0090 fax
*lwindham@becketlaw.org*

*Counsel for Plaintiffs*

*\*W.D. Mich. admission pending*

**COME NOW** Plaintiffs and plead as follows:

## INTRODUCTION

1. This lawsuit concerns a Christian student group that has been active at Wayne State University for seventy-five years, and Wayne State's decision to discriminate against that group and strip it of recognized student organization status because of its Christian beliefs.

2. Wayne State—an arm of the Michigan State government—makes the remarkable claim that it violates university policies for InterVarsity Christian Fellowship to choose only Christian leaders rather than Jewish, Muslim, or atheist ones.

3. Wayne State rightly allows fraternities to have only male leaders, female athletic clubs to have only female leaders, and African-American clubs to have only African-American leaders. But Wayne State cannot then say it is wrong for a Christian club to have only Christian leaders.

4. Indeed, during the 75 years the Wayne State chapter had been active on the Wayne State campus, it had only Christian leaders.

5. Yet despite acting as a vital part of the Wayne State community for more than 75 years, Wayne State has now stripped InterVarsity of the rights and benefits granted to recognized student organizations, relegating InterVarsity to second-class status.

6. Wayne State's attempt to tell InterVarsity how to define its faith and select its leaders is anti-religious discrimination that violates clearly established federal and state law.

7. Simply put, Wayne State is unconstitutionally targeting InterVarsity because of InterVarsity's religious beliefs.

8. As an arm of the state of Michigan, Wayne State is subject to Michigan anti-discrimination law, which prohibits religious discrimination in educational institutions.

9.   Michigan state officials have a duty and an obligation to follow state and federal law, but those laws are being violated with impunity by Wayne State and its officials, and higher Michigan state officials in Lansing have a duty to stop them.

10.   In the 2012 case *Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, the United States Supreme Court unanimously affirmed over a century of legal precedent protecting the right of religious groups to manage their own internal religious affairs, including determining their own religious beliefs and selecting their own religious leaders.

11.   And in the 2016 case *InterVarsity Christian Fellowship v. Conlon*, the United States Court of Appeals for the Sixth Circuit has specifically ruled that InterVarsity Christian Fellowship/USA has the right to select its own religious leaders, free from government interference. Wayne State officials were fully aware of that precedent, but chose to exclude the Wayne State chapter of InterVarsity solely because of how it selects its religious leaders.

12.   The Supreme Court has also insisted that only the most compelling reasons could justify censoring a private group's expression, or punishing a private association for exercising its right to assemble with those who share its mission and beliefs. Wayne State offers no such compelling reason here.

13.   Wayne State knows that derecognizing InterVarsity after 75 years on campus is unfair, illegal, and unconstitutional. Like other state universities, such as the University of Michigan and Michigan State University, Wayne State allows other student groups to define their own mission and limit both leadership and even membership to those who embrace that mission.

14.   For all these reasons, state officials must be directed to stop their unlawful conduct, and Wayne State's discrimination against InterVarsity and Wayne State's entanglement in InterVarsity's internal religious affairs must be enjoined.

2

## JURISDICTION AND VENUE

15. This action arises under the Constitution and laws of the United States. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

16. The Court has authority to issue the declaratory and injunctive relief sought under 28 U.S.C. §§ 2201 and 2202.

17. Venue lies in this district under 28 U.S.C. § 1391(b)(1) and (2).

## IDENTIFICATION OF PARTIES

18. Plaintiff InterVarsity Christian Fellowship/USA ("InterVarsity USA") is an Illinois not-for-profit corporation with its headquarters in Madison, Wisconsin. InterVarsity is a Christian ministry active in campus ministry on hundreds of campuses across the United States and across Michigan, including chapters at the Central Michigan University, Eastern Michigan University, Grand Valley State University, Lake Superior State University, Michigan State University, Michigan Technological University, Northern Michigan University, Oakland University, Saginaw Valley State University, the University of Michigan, Wayne State University, and Western Michigan University.

19. Plaintiff InterVarsity Christian Fellowship Wayne State Chapter ("the Chapter" or "the Wayne State Chapter") is an unincorporated association which conducts religious ministry at Wayne State University in Detroit, Michigan. The association is a constituent chapter of InterVarsity Christian Fellowship/USA and has been a recognized student organization of Wayne State for over 75 years.[1]

20. Defendant Board of Governors of Wayne State University is a body corporate established by Article VIII § 5 of the Michigan Constitution.

---

[1]  "InterVarsity" refers to both the InterVarsity chapter at Wayne State and InterVarsity USA.

21. Defendant Richard Snyder is the Governor of the State of Michigan and is charged with overseeing the agencies of the State of Michigan. He is located in Lansing. He is sued in this official capacity only.

22. Defendant William Schuette is the Attorney General of the State of Michigan and is charged with enforcing the laws of the State of Michigan. He is located in Lansing. He is sued in his official capacity only.

23. Defendant Agustin V. Arbulu is the Director of the Michigan Department of Civil Rights and is charged with enforcing the civil rights laws of the state of Michigan. He is located in Lansing. He is sued in his official capacity only.

24. Defendant Dr. M. Roy Wilson is the President of Wayne State University and is sued in his official capacity only.

25. Defendant Sandra Hughes O'Brien is Chair of the Board of Governors of Wayne State University and is sued in her official capacity only.

26. Defendant David A. Nicholson is Vice Chair of the Board of Governors of Wayne State University and is sued in his official capacity only.

27. Defendant Michael Busuito is a member of the Board of Governors of Wayne State University and is sued in his official capacity only.

28. Defendant Diane L. Dunaskiss is a member of the Board of Governors of Wayne State University and is sued in her official capacity only.

29. Defendant Mark Gaffney is a member of the Board of Governors of Wayne State University and is sued in his official capacity only.

30. Defendant Marilyn Kelly is a member of the Board of Governors of Wayne State University and is sued in her official capacity only.

31. Defendant Dana Thompson is a member of the Board of Governors of Wayne State University and is sued in her official capacity only.

32. Defendant Kim Trent is a member of the Board of Governors of Wayne State University and is sued in her official capacity only.

33. Defendant David J. Strauss is the Dean of Students at Wayne State University. He is sued in his official and individual capacities.

34. Defendant Ricardo Villarosa is the Coordinator of Student Life and Student Organization Services at the Dean of Students Office at Wayne State. He is responsible for the student organization recognition process. He is sued in his official and individual capacities.

35. All Defendants are persons acting under color of state law within the meaning of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

InterVarsity Christian Fellowship/USA

36. InterVarsity Christian Fellowship/USA is active in campus ministry on hundreds of campuses across the United States and Michigan. It has over 1,000 individual chapters. It is a charter member of the International Fellowship of Evangelical Students, an association of over 160 evangelical Christian student movements worldwide.

37. InterVarsity was founded by students at the University of Cambridge in 1877. In 1938, students at the University of Michigan formed the first InterVarsity chapter in the United States. *See* https://intervarsity.org/about-us/intervarsity-and-ifes-history.

38. InterVarsity currently has chapters at many universities and colleges in Michigan, including at Central Michigan University, Eastern Michigan University, Grand Valley State University, Lake Superior State University, Michigan State University, Michigan Technological

University, Northern Michigan University, Oakland University, Saginaw Valley State University, the University of Michigan, Wayne State University, and Western Michigan University.

39. InterVarsity's purpose "is to establish and advance at colleges and universities witnessing communities of students and faculty who follow Jesus as Savior and Lord[.]" *See* https://intervarsity.org/about-us/our-purpose.

<u>InterVarsity's Mission and Activities at Wayne State</u>

40. Not long after the University of Michigan chapter was founded in 1938, a group of Christians established the InterVarsity Chapter at Wayne State University. The Chapter has been active ministry serving the Wayne State community for over seventy-five years.

41. The Chapter fulfills its  mission by providing a community where students can discuss their faith, hosting weekly Bible studies, leading times of prayer and worship, facilitating campus discussions on important issues, and serving both Wayne State and local communities.

42. The Chapter was originally organized under the name Wayne Christian Fellowship, and has been active on at Wayne State since at least 1941.

43. A yearbook entry from 1941 notes that the organization was amongst the religious groups that "play a prominent part in student activities":



With so many students at Wayne there are bound to be widely divergent interests. These active interests are expressed in the formation and participation of a large variety of campus organizations.

For example, there is the Wayne University Alumni Association. Under the leadership of President Leonard J. Harding and a Board of 24 members, the Alumni took over the sponsorship of the *Messiah* in December, as well as sponsoring a successful Spring Band Concert and publishing a magazine for the alums. The Association is working to further the expansion of Wayne physically, athletically, academically, and otherwise.

Religious groups play a prominent part in student activities. The Newman Club for Catholic students with Betty McLaughlin as head, topped its program with its annual Ball in January and with a Lenten Communion Breakfast where the Rev. Archbishop Edward J. Mooney was guest. The Wayne Christian Fellowship brought a large number of speakers to Wayne, the most fascinating perhaps being an African missionary.

44. An entry in the campus yearbook from 1956 notes the organization's affiliation with InterVarsity USA:



45. Since its founding, InterVarsity has been and has held itself out as a religious organization. For instance, this yearbook entry from 1957 noted that the Chapter "was organized to provide Christian fellowship for college and university students, and to bring before them the question of God's will":



Top row: Helen Wilson, Norma Guesson, Hugh Daly, Stanley Terry, Arthur Schneider.
Middle: Vi Reutlinger, Kay Oefgner, Beverly Smith, Elizabeth Clmstead, Charlotte Erpelding.
Bottom: Rev. Robert Wilkie, James Brown, Ann Heideman, Don Pottet.

46.   Like all InterVarsity chapters, the purpose of the Wayne State InterVarsity chapter is to "establish and advance a witnessing community of students and faculty who follow Jesus as Savior and Lord: growing in love for God, God's Word, God's people of every ethnicity and culture[,] and God's purposes in the world." *See* https://intervarsity.org/about-us/our-purpose.

47.   As part of their commitment to Christian service, the leaders and members of the Chapter also participate in community service at Wayne State and in the community. For instance, its members have volunteered at the Wayne State food pantry, helped clean up blighted neighborhoods in Detroit, and regularly sponsor "prayer walks" on campus.

48.   The organization has also contributed to the campus community by raising awareness and promoting dialogue about important issues. For instance, in 2009 the Chapter sponsored a series of events across campus entitled "The Price of Life" which drew attention to the plague of human trafficking. And for more than a decade the Chapter has promoted dialogue on campus about

8

important issues. Its students regularly host tables in the student center and around campus where they engage with other students and encourage them to engage important and sensitive issues like the intersection between Christianity, race, and social justice.

49.  In accordance with the policies, practices, and religious mission of InterVarsity, the Chapter welcomes all students to join its discussions, activities, and Bible studies. It also welcomes all students as members.

50.  Only the Chapter's leadership is required to share its Christian faith. And that's because InterVarsity's leaders hold an important spiritual leadership role within the group; they are given the title of "Christian Leader" and held to biblical standards for leadership. This role requires and authorizes them to perform a number of important religious functions for the group. For instance, one of the primary duties of leaders is leading Bible studies and engaging in religious teaching. Additionally, leaders will lead group prayer, organize and participate in religious outreach, and organize prayer vigils and other events. Leaders also participate in the administration of the chapter.

51.  The Wayne State Chapter, like all InterVarsity student chapters, takes leadership responsibilities seriously. As stated in the chapter constitution, leadership applicants are informed that they are "preparing for serious spiritual responsibilities" and must be prepared to "exemplify Christ-like character, conduct and leadership." Leadership applicants are asked to describe their "relationship with Jesus Christ" and their "personal devotional life," identify the specific local church they are involved with, and commit to giving at least 10 hours per week to chapter leadership. *See* InterVarsity  Christian  Fellowship/USA  Model  Constitution, https://tinyurl.com/y7hfl3ox.

52. Further, before assuming a leadership role, students are invited to participate in an apprenticeship program run by InterVarsity USA. That program prepares students to provide spiritual leadership and training for their peers. Only students who have completed that program may take on formal positions as leaders.

53. Finally, because of the importance of the spiritual role and duties, before a student may become a leader, she must affirm InterVarsity USA's statement of faith.

54. This is a matter of basic institutional integrity. To remain in existence and to carry out its mission—to be the "InterVarsity *Christian* Fellowship"—InterVarsity must have leaders who themselves embrace and follow InterVarsity's mission. InterVarsity's Bible studies, prayers, worship, and religious service would be hollow, inauthentic, and unlikely to endure if it did not require its leaders to share its basic organizational mission and guiding purpose.

55. It is also a matter of personal integrity, both for potential leaders and members. InterVarsity cannot and will not ask leaders who do not share its beliefs to lead members in prayer or to convey those beliefs. Nor can InterVarsity ask its members to participate in worship led by insincere leaders.

56. Affiliation with InterVarsity USA allows the Wayne State chapter of InterVarsity to participate in inter-collegiate retreats, worship, service activities and events that enrich and add significantly to the students' religious training and experience.

<u>Wayne State Derecognizes the InterVarsity Chapter</u>

57. In 2017, Wayne State instituted a new online system for student organization approval. Cristina Garza, InterVarsity's chapter president at the time, submitted InterVarsity's constitution. That constitution is based upon the standard constitution used by student chapters of Intervarsity USA. Based upon knowledge and belief, that constitution was identical in all relevant respects to

those used by InterVarsity chapters at other universities in Michigan, such as the University of Michigan and Michigan State University. The constitution makes clear that InterVarsity welcomes all students, regardless of religious beliefs, as members, but asks that InterVarsity's student leadership embrace the organization's religious mission.

58. After completing the online process, Ms. Garza initially received a message that her submission was complete and she believed that the student chapter was approved. Shortly before the end of the 2016-2017 school year, she received a message stating that the constitution that she had submitted did not meet the necessary requirements. But the Chapter had a provisional approval at that time, so it was still able to reserve free rooms, use the student organization website, and enjoy the other benefits available to recognized student organizations.

59. At the start of the 2017-2018 school year, the Chapter continued to operate as it had for over seven decades. It reserved rooms on campus and planned to host a table at FestiFall, the fall student organization recruitment fair, until that event was canceled due to rain.

60. On October 3, 2017, however, Ms. Garza received a message stating that InterVarsity's constitution was not approved.

61. She then contacted the Dean of Students' Office and was informed by Ricardo Villarosa, the Coordinator of Student Life and Student Organization Services, that the constitution's requirement that leaders share the chapter's faith was inconsistent with the school's non-discrimination code.

62. Wayne State's Code states that discrimination on the basis of "race, color, sex (including gender identity), national origin, religion, age, sexual orientation, familial status, marital status, height, weight, disability, or veteran status" is forbidden in "in all of [Wayne State's] operations,

employment    opportunities,    educational    programs,    and    related    activities."
https://oeo.wayne.edu/pdf/affrm_actn_policy.pdf.

63.   It is not clear that this portion of the code applies to student organizations, since they are private organizations not run by Wayne State. However, Wayne State's current position is that it applies to the Chapter.

64.   Many recognized student organizations at Wayne State openly place limitations on both membership and leadership. Indeed, at about the same time that Wayne State was taking action against Intervarsity for merely asking that its *leaders* share its faith, Wayne State was advertising a new fraternity whose *membership* was for "like-minded men." *See* https://orgsync.com/143522/news_posts/243086.

65.   Ms. Garza asked why fraternities and sororities were not penalized for violating the policy. Mr. Villarosa stated that their constitutions complied. Ms. Garza understood his comments to mean that campus organizations such as single-sex fraternities and sororities may state in their constitutions that leadership positions were open to all, but are allowed to disregard that rule in practice.

66.   Upon information and belief, Wayne State had received no complaints about the Chapter's leadership selection policies and practices.

67.   On October 17, Ms. Garza asked for further clarification and noted that denying InterVarsity's ability to select leadership that shared its faith raised issues of religious freedom.

68.   In an October 23 letter from Sarah Luke, Assistant General Counsel, Wayne State responded in writing, declaring that requiring Intervarsity to accept nonreligious leadership was constitutional because "the policy is viewpoint neutral and is applied equally to all organizations seeking recognition."

69.   On October 26, Wayne State confirmed that it had derecognized the Chapter and cancelled all of the group's meeting-space reservations.

70.   That derecognition happened quickly and without following the process laid out for derecognition in Wayne State's code.

71.   Since then, InterVarsity has been unable to reserve free meeting rooms, host free tables for interested students, appear on the website where students may go to learn more about student organizations, apply for funding available to recognized student groups, or receive any other benefits granted to other recognized student groups.

72.   Since then, InterVarsity has also been unable to post information or use the OrgSync system. OrgSync is an online portal run by Wayne State where recognized student organizations host pages, post announcements, and advertise upcoming events. It is the system that Wayne State uses for student organization applications and other important organization activities. Students at Wayne State may log in to the OrgSync system to learn about upcoming events and stay connected with student organizations.

73.   To continue accomplishing its religious mission, serving its members, and reaching out to the campus community, InterVarsity has been renting space at Wayne State at its own expense. Every time it wants to hold a Bible study, it must pay $100 to rent a room in the student center. This is a serious hardship on InterVarsity, which has been hosting multiple weekly Bible studies for many years.

74.   To date, InterVarsity has been forced to pay $ 2,720 to reserve space on campus that it would otherwise have been able to access for free as a recognized student organization.

75. On November 27, 2017, Tom Lin, InterVarsity USA's national president, wrote a letter to Dr. M. Roy Wilson, President of Wayne State University. That letter is attached as Exhibit A. In

that letter, Mr. Lin stated that the Chapter had been derecognized by Wayne State because InterVarsity asks its leaders to share its faith, and argued Wayne State had selectively enforced its non-discrimination policy against InterVarsity.

76. In that letter, Mr. Lin explained why InterVarsity needed student leaders that share its faith. He explained that student leaders are responsible for "leading [the group's] students in Bible study, prayer, worship, and acts of service," and also must "model [the group's] faith commitment." Thus, to accomplish InterVarsity's mission, its leaders accordingly must "both live and express that commitment" to the organization's faith.

77. That letter also discussed controlling caselaw, including *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015), which clearly establish InterVarsity's right to select leaders who share its faith.

78. On November 29, 2017, Louis Lessem, Wayne State's Vice President and General Counsel responded, recognizing that "this is an important matter for all concerned" and promising to follow up with a more detailed response.

79. But as of December 14, InterVarsity was still derecognized, requiring Mr. Lin to send a follow up e-mail requesting an immediate solution and explaining that "being derecognized is damaging and stigmatizing for both student groups and for the students who lead and participate in them." Mr. Lin also expressing concern that InterVarsity would be unable to participate in recruiting events in the upcoming semester, which would be very damaging to the chapter since such events are important to maintaining a healthy organization on campus.

80. In a December 14 e-mail, Mr. Lessem stated that the conflict between InterVarsity and Wayne State should be "a solvable problem" and expressed a desire "to attempt to reach a mutually amicable arrangement." That email is attached as Exhibit B. Mr. Lessem also suggested that the

parties resolve the issue "before either of us is compelled to take aggressive measures," which InterVarsity understood as a threat of further retaliatory action against the student chapter or its members. And in response to Mr. Lin's concern about missing the upcoming student organization recruiting event, Mr. Lessem stated that no such event existed and that the delay in finding a solution might extend for *six months*: "if there are concentrated recruiting events held in January or February, I am not aware of them. I believe the next opportunity for student organizations to recruit new members is more than half a year hence. There is time and then some to reach attempt to reach a mutually amicable settlement."

81.   On January 11, 2018, Mr. Lin responded, explained that six months would be far too long to leave InterVarsity derecognized and informing Mr. Lessem that there *was* an upcoming student group recruitment event—"WinterFest"—held on January 24. Mr. Lin expressing a willingness to continue dialogue with Wayne State on the reinstatement of InterVarsity, but due to the ongoing hardships of derecognition, Mr. Lin requested that Wayne State provisionally reinstate the organization while negotiations continued, so that would have the same status that it had in the late spring and early fall of 2017. Provisional re-instatement would also allow it to fully participate in WinterFest.

82.   However, on January 18, Thomas F. Cavalier, Assistant General Counsel for Wayne State, responded and refused the request to provisionally reinstate InterVarsity. He stated that "the University does not provide provisional approval for recognized student organization status once it has determined that the group is not eligible for that status." He acknowledged that he "[c]ertainly underst[oo]d InterVarsity's desire to participate in Winterfest, a January 24, 2018 recruiting event." But rather than being allowed to participate in WinterFest on an equal footing

15

with other student groups on campus, Mr. Cavalier suggested that InterVarsity "may reserve a vendor table" for a fee and on a different floor of the Student Center.

83. On January 24, WinterFest took place in the second-floor ballroom of the student center. recognized student organizations were permitted to reserve free tables to reach out to interested students. InterVarsity paid a $ 80 fee, but was not permitted to operate in the second-floor ballroom with the other student groups. It was relegated to a vendor space downstairs. The space was far from the entrance doors and was out of the way for many students who were going directly to the ballroom for WinterFest.

84. Without full participation at the WinterFest, InterVarsity was unable to reach out to as many students as it normally would have been able to do. Furthermore, Wayne State's actions marginalized and stigmatized InterVarsity, making its recruiting efforts less effective.

85. Since InterVarsity has been derecognized, and its constitution is identical in relevant respects to the constitutions used at Michigan State University, the University of Michigan, and other state university campuses, InterVarsity USA fears that other chapters will be derecognized as well, particularly if WSU attempts to justify its actions on the basis of state law.

Wayne State's Stated Policies and Practices

86. Wayne State recognizes "over 400 recognized student organizations" which "represent[] the interests and activities of thousands of Wayne State University students." *See* https://doso.wayne.edu/org-services/start.

87. A minimum of two currently registered Wayne State students are required to form a new recognized student organization. *Id.*

88. Wayne State promises to review all requests to start a student organization within 3-5 business days. I*d.*

89. Recognized student groups are eligible to apply to the Student Activities Funding Board for funding for events and programs on campus. Such funds are not available to groups that are not recognized on campus. *See* https://doso.wayne.edu/org-services/funding.

90. Recognized student organizations are entitled to a host of benefits and privileges not available to outside organizations or the public at large. Those benefits include, without limitation, the ability to reserve free meeting space in the student center, the ability to participate in student organization recruiting events like FestiFall and WinterFest, the ability to reserve free tables on campus for student outreach, a presence on Wayne State's website, which lists every recognized student organization and provides additional information about them, the ability to apply for student organization funds, the ability to use OrgSync to reserve space, the ability to use OrgSync to reach students seeking more information about student groups and on-campus activities, and the ability to advertise on campus bulletin boards and kiosks.

91. Recognized student organizations are also entitled to notice, a hearing, and other procedures before they are derecognized for code violations. None of those processes were followed before Wayne State derecognized InterVarsity.

92. Obtaining recognized student organization status is particularly important at a university like Wayne State, which is a commuter school where most students live off campus and are only present on campus for a few hours per week for classes and coursework. Student organizations provide a sense of community for students who do not live on campus and may struggle to make connections with other students. A presence in the student center and a regular meeting space on campus enables student organizations to provide community and reach out to students who live and work in scattered locations. Without recognized status, it is much harder for InterVarsity to reach the community it believes that it is called by God to serve.

<u>Wayne State's Selective and Improper Enforcement</u>

93. Upon information and belief, Wayne State does not apply its non-discrimination policy to students in a neutral or even-handed fashion.

94. For example, Wayne State recognizes club sports as a form of recognized student association. Wayne State publishes a model constitution for club sports. That model constitution removes "sex (including gender identity)" from the non-discrimination statement, thus permitting club sports to discriminate according to sex and gender identity. *See* http://rfc.wayne.edu/adventure/sample_constitution.pdf.

95. Upon information and belief, Wayne State recognizes other religious student groups as recognized student organizations, even though those other religious student groups choose their members on religious grounds.

96. Upon information and belief, Wayne State recognizes a church, New Life Church, as a recognized student organization, even though it chooses its leadership on religious grounds.

97. New Life Church is associated with the Southern Baptist Convention.

98. Wayne State's own website contains numerous listings for organizations which appear to limit membership and/or leadership based upon "race, color, sex (including gender identity), national origin, religion," or other prohibited factors.

99. Wayne State recognizes Ahmadiyya Muslim Students Association as a recognized student organization. Its website states that its purpose is to "bring Ahmadi Muslim youth together in university," and that it is made up of "regular young Muslims trying their best to practice and express their faith in university."

100. Wayne State recognizes Alpha Epsilon Phi as a recognized student organization. The description of the organization on Wayne State's website says that its purpose is "to inspire and support exemplary women . . . while building on the vision of our Jewish founders."

101. Wayne State recognizes Alpha Epsilon Pi as a recognized student organization. The description of the organization on Wayne State's website says "Alpha Epsilon Pi, the Global Jewish Fraternity, was founded to provide opportunities for Jewish men."

102. Wayne State recognizes the Albanian American Student Organization as a recognized student organization. The description of the organization on Wayne State's website says that it was founded "to bring Albanians together."

103. Wayne State recognizes Alpha Gamma Delta as a recognized student organization. Alpha Gamma Delta's description on Wayne State's website states that it is "an international women's fraternity that exists to provide opportunities for personal development through the spirit of sisterhood."

104. Wayne State recognizes Alpha Kappa Alpha Sorority as a recognized student organization. Alpha Kappa Alpha's description on Wayne State's website states that it is "the oldest Greek-letter organization established by African American college-trained women." https://orgsync.com/156246/chapter (Wayne State chapter page). Its national website states that "[f]ederal law recognizes the right of college fraternities and sororities to maintain single sex membership policies" and "[c]onsistent with that right, Alpha Kappa Alpha Sorority, Incorporated is a women's organization is a women's organization's and membership is open to women." http://aka1908.com/membership/aspiring-or-prospective-members).

19

105. Wayne State recognizes Alpha Phi Alpha as a recognize student organization. Its description on Wayne State's website states that "Alpha Phi Alpha was the first intercollegiate Greek-letter fraternity established for African-Americans."

106. Wayne State recognizes Alpha Sigma Phi as a recognized student organization. According to its description on Wayne State's website, "The rebirth of Beta Tau [chapter of Alpha Sigma Phi] began in 2009, when with the invitation of Wayne State, Alpha Sigma Phi came to campus to recruit members for a colonization effort." That description also states that "The Brothers of Beta Tau Chapter live by the five values and become, as stated in the chapter motto: Men of Honor, Men of Class, and Men of Stature."

107. Wayne State recognizes Anakh Sherniyan Di as a recognized student organization. According to its description on Wayne State's website, Anakh Sherniyan Di is "Michigan's all-girls competitive Bhangra dance team."

108. Wayne State recognizes the Association of Black Social Workers as a recognized student organization. According to its description on Wayne State's website, "The Association of Black Social Workers at Wayne State (ABSW) is comprised of people of African ancestry."

109. Wayne State recognizes the Association of Latino Professionals for America as a recognized student group. According to its description on Wayne State's website, the Association "develops the next generation of Latino professionals via experiential leadership development and mentoring."

110. The foregoing examples are just those that begin with the letter "A." There are many more.

111. Wayne State sponsors football and basketball teams, among other collegiate sports. Upon information and belief, those teams are permitted to discriminate and do discriminate according to sex, height, weight, and disability, despite Wayne State's code.

112.    Wayne State also sponsors programs which discriminate according to categories supposedly prohibited by Wayne State's stated policies. For instance, Wayne State's Office of Multicultural Student Engagement offers particular programs and events directed towards "young men" and others directed towards women. *See* Office of Multicultural Student Engagement, https://omse.wayne.edu/ (describing The Network, "a learning community for young men aimed to support what they are learning inside the classroom" and RISE an effort to "provide a safe space for self-identified women of color (WOC)"). Wayne State likewise has an all-female floor in one of its residential halls and a women's only area in its recreation and fitness center. *See* Dean of Students Office, Women's Resources, https://doso.wayne.edu/womensresources. Wayne State also accepts funding for and advertises its participation in the Upward Bound scholarship program, which is limited to those who are U.S. veterans. CITE?; *see also* http://omvae.wayne.edu/ (Wayne State program for veterans). Wayne State also administers and advertises several scholarship programs that discriminate on the basis of sex, race, sexual orientation, and gender identity. *See*, *e.g.*, https://www.med.wayne.edu/ume-financial-aid/school-of-medicine-scholarships/ (sex, race); http://cfpca.wayne.edu/files/lgbtguidelinesjan2017.pdf (sexual orientation, gender identity).

113. As demonstrated by these examples and others, Wayne State is selectively interpreting and enforcing its nondiscrimination code in a manner that allows Wayne State itself and many student organizations to discriminate according to supposedly-prohibited categories on the face of their constitutions, in practice, or both.

114. Wayne State is aware of these violations of its non-discrimination policy, but on information and belief, it has enforced and interpreted its code in a way that discriminates against InterVarsity.

115. Defendants are aware of this discriminatory application of Wayne State's code, but have affirmed their earlier determination that InterVarsity's constitution makes it ineligible for recognized student organization status.

116. David Strauss and Ricardo Villarosa are aware that their actions toward InterVarsity are in conflict with clearly established law, including *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829 (6th Cir. 2015), yet they chose to engage in and continue those unlawful actions.

117. Wayne State University's Board of Governors are state officials elected in statewide elections.

118. Wayne State University is an agency and an arm of the state of Michigan. *See Kreipke v. Wayne State Univ.*, 807 F.3d 768 (6th Cir. 2015).

119. Governor Richard Snyder is granted power over elected and appointed state officials and is charged by law with the responsibility to ensure that state agencies comply with state and federal law.

120. Attorney General William Schuette is the state's top law enforcement official and is responsible for defending state agencies and officials. He also conducts investigations and takes enforcement actions to ensure that state agencies such as state universities comply with state and federal law.

121. Commissioner Agustin V. Arbulu is head of the state's civil rights commission and is charged with securing the equal protection of civil rights, including freedom from religious discrimination, under state and federal law.

122. Upon information and belief, other Michigan public universities have promulgated non-discrimination policies that apply to recognized student organizations.

123. Without corrective action from Snyder, Schuette, and Arbulu, InterVarsity's chapters on Michigan state university campuses across the State of Michigan will be put in danger of derecognition.

**CLAIMS**

**COUNT I**

**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise & Establishment Clauses**
**Ministerial Exception**

124. Plaintiffs incorporate by reference all preceding paragraphs.

125. Under the Free Exercise and Establishment Clauses of the First Amendment, religious groups have the right to select their leaders without government interference. *See Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012).

126. InterVarsity is a religious organization created to establish a community on campus in which students grow in love for God, God's Word, God's people of every ethnicity and culture, and God's purposes in the world.

127. InterVarsity's leaders provide spiritual ministry by leading the study of scripture, prayers, and worship, and by selecting ways that InterVarsity can serve in the community and with other religious ministries as a means of expressing and developing its faith.

128. InterVarsity's leaders are selected based upon their agreement with InterVarsity's religious beliefs, their training in spiritual leadership, and their ability to express InterVarsity's beliefs effectively and credibly.

129. InterVarsity's leaders are the primary means by which InterVarsity shares its religious beliefs with others and are responsible for determining how it will express its faith to others. Its leaders embody its faith.

130. InterVarsity's selection of its religious leaders is protected by the First Amendment. *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829 (6th Cir. 2015).

131. By revoking InterVarsity's status as a recognized student group—with the rights, benefits, and privileges that flow from that status—due to InterVarsity's policies regarding the selection of its religious leaders, Wayne State infringes on InterVarsity's First Amendment rights to select its own religious leaders.

132.  Wayne State also impermissibly entangles itself in InterVarsity's internal religious beliefs and its internal religious affairs.

133. Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT II

**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise & Establishment Clauses**
**Internal Autonomy**

134. Plaintiffs incorporate by reference all preceding paragraphs.

135. Under the Free Exercise and Establishment Clauses of the First Amendment, religious groups have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952).

136. InterVarsity is a religious organization created to establish a community on campus in which students grow in love for God, God's Word, God's people of every ethnicity and culture, and God's purposes in the world.

137. InterVarsity's statement of faith sets forth its core religious beliefs that define its mission, guide its work, and help InterVarsity select its leadership.

138. InterVarsity's purpose is to establish a community on campus in which students grow in love for God, God's Word, God's people of every ethnicity and culture, and God's purposes in the world.

139. InterVarsity requires its leaders to affirm the group's religious beliefs to ensure that they are committed to InterVarsity's mission and are capable of authentically conveying its beliefs to other members.

140. InterVarsity's means of selecting its leadership is designed to select and train individuals who share and can express InterVarsity's faith.

141. By revoking InterVarsity's status as a recognized student group, with the rights, benefits, and privileges that flow from that status, unless InterVarsity changes its internal method of selecting religious leaders, Wayne State infringes on InterVarsity's First Amendment right to govern itself according to religious principles and select its leaders free from government interference.

142. Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT III

**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise Clause**
**Targeting of Religious Beliefs**

143. Plaintiffs incorporate by reference all preceding paragraphs.

144. "[A] law targeting religious beliefs as such is never permissible." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2024 n.4 (2017) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)).

145. The government has no authority to control the content of or the expression of religious beliefs within the context of private religious associations. *Braunfeld v. Brown*, 366 U.S. 599, 603 (1961) ("The freedom to hold religious beliefs and opinions is absolute.").

146. Wayne State derecognized InterVarsity because Wayne State claims that InterVarsity's leadership policies violate Wayne State's non-Discrimination policy.

147. Other student organizations at Wayne State are permitted to select their leadership, and even membership, on the basis of their values, purposes, and beliefs.

148. By stripping InterVarsity of recognition because of its leadership policies while ignoring or tacitly approving the leadership practices of other groups, Wayne State is targeting and seeking to control InterVarsity's religious beliefs as such, which violates the Free Exercise Clause of the First Amendment to the United States Constitution.

149. Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

**COUNT IV**

**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Exercise Clause**
**Not Generally Applicable**

150. Plaintiffs incorporate by reference all preceding paragraphs.

151. "[L]aws burdening religious practice must be of general applicability." *Lukumi*, 508 U.S. at 542.

152. Wayne State's non-discrimination code is neither applied to nor enforced equally against all student organizations.

153. It is not clear that Wayne State's non-discrimination code applies to student organizations. But to the extent that it does, it prohibits discrimination on the basis of "race, color, sex (including

gender identity), national origin, religion, age, sexual orientation, familial status, marital status, height, weight, disability, or veteran status."

154. Many student organizations on campus, including fraternities and sororities, explicitly restrict membership and/or leadership on the basis of one or more of the categories identified in the non-discrimination code.

155. Many student organizations on campus have an uninterrupted pattern of restricting membership and/or leadership on the basis of one or more of the categories identified in the non-discrimination policy.

156. Wayne State has failed to consistently enforce the non-discrimination policy against student organizations that restrict membership and leadership on the basis of one or more of the categories identified in the non-discrimination policy.

157. InterVarsity does not restrict leadership on the basis of any of the categories identified in the Human Rights Policy, other than on the basis of religion.

158. By stripping InterVarsity's recognition because of its alleged noncompliance with Wayne State's non-discrimination code, Wayne State is applying a standard to InterVarsity that is not generally applicable to other student organizations on campus.

159. Wayne State itself likewise operates programs and administers scholarships that do not comply with its own policies.

160. Wayne State's enforcement of its non-discrimination code is under-inclusive in that it fails to restrict nonreligious conduct that endangers the Policy's principles in a similar or greater degree than does InterVarsity's conduct.

161. Wayne State does not have a compelling government interest pursued by the least restrictive means to justify this unequal application of its non-discrimination code against InterVarsity.

162. Wayne State's unequal application of its non-discrimination code violates the Free Exercise Clause of the First Amendment to the United States Constitution.

163. Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

### COUNT V

**42 U.S.C. §1983**
**Violation of the First Amendment to the U.S. Constitution**
**Establishment Clause**
**Denominational Discrimination**

164. Plaintiffs incorporate by reference all preceding paragraphs.

165. "The clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another." *Larson v. Valente*, 456 U.S. 228, 244 (1982).

166. Wayne State seeks to apply its non-discrimination code to penalize InterVarsity because of its religious beliefs.

167. Wayne State has not penalized other religious groups on campus for their religious beliefs and leadership selection.

168. Wayne State's preference for some religious beliefs and leadership selection practices over InterVarsity's religious beliefs and leadership selection practices violates the Establishment Clause of the First Amendment to the United States Constitution.

169. Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT VI

### 42 U.S.C. §1983
### Violation of the First Amendment to the U.S. Constitution
### Free Speech Clause
### Expressive Association

170. Plaintiffs incorporate by reference all preceding paragraphs.

171. Applying Wayne State's non-discrimination policy to InterVarsity would compel it to select leaders who do not share or live out its religious beliefs.

172. InterVarsity is an association of like-minded Christians who seek to express their Christian faith through word and deed.

173. InterVarsity engages in expression and expressive activities as a group and believes that its activities and organization are a witness of its faith and thus inherently expressive.

174. Causing InterVarsity to accept leaders who do not share InterVarsity's religious beliefs would force the group to associate with and promote a message with which it disagrees and which runs contrary to the expressive purposes for which InterVarsity was created and operates.

175. Compelling InterVarsity to associate with and promote a message with which it disagrees and which runs contrary to the expressive purposes for which it was created and operates is not narrowly tailored to a compelling governmental interest.

176. Compelling InterVarsity to associate with leaders who do not believe and act in accordance with InterVarsity's religious beliefs would put into jeopardy its status as a chapter of the national InterVarsity Christian Fellowship and deprive the InterVarsity chapter the opportunity to associate with likeminded believers.

177. Defendants' actions thus violate InterVarsity's right of expressive association as secured to it by the First Amendment of the United States Constitution.

178. Absent injunctive and declaratory relief against Wayne State's non-discrimination policy, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT VII

**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Speech Clause**
**Compelled Speech**

179. Plaintiffs incorporate by reference all preceding paragraphs.

180. Applying Wayne State's non-discrimination policy to InterVarsity would force it to accept leaders who do not share its faith and allow those leaders to teach Bible studies, lead outreach activities, and carry the group's message.

181. This forced inclusion of leaders who may not share InterVarsity's religious beliefs and mission would communicate both to InterVarsity's own members as well as to the community as large that InterVarsity views are insincere and different than what InterVarsity actually espouses.

182. Defendants' actions would thus violate InterVarsity right to be free from compelled speech as secured to them by the First Amendment of the United States Constitution.

183. Compelling InterVarsity to convey messages that it disagrees with is not narrowly tailored to a compelling governmental interest.

184. Absent injunctive and declaratory relief against such compelled speech, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT VIII

**42 U.S.C. §1983**
**Violation of the First Amendment to the U.S. Constitution**
**Free Speech Clause**
**Viewpoint Discrimination**

187.  Plaintiffs incorporate by reference all preceding paragraphs.

188.  Governmental efforts to regulate speech based on the "specific motivating ideology or the opinion or perspective of the speaker" is a "blatant" and "egregious" form of impermissible speech restriction. *Rosenberger v. Rector and Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

189.  Wayne State is discriminatorily applying its non-discrimination policy to penalize InterVarsity because of its religious opinions and perspectives.

190.  Discriminating against InterVarsity's expressed religious opinions and perspectives is not narrowly tailored to a compelling governmental interest.

191.  Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

**COUNT IX**

**42 U.S.C. § 1983**
**Violation of the First Amendment to the U.S. Constitution**
**Assembly Clause**

192.  Plaintiffs incorporate by reference all preceding paragraphs.

193.  By denying InterVarsity recognized student group status because of its religious beliefs, Wayne State infringes on InterVarsity's First Amendment right "peaceably to assemble" to engage in otherwise lawful religious worship and speech activities with persons of their choosing. *See Thomas v. Collins*, 323 U.S. 516, 532-40 (1945).

194.  Wayne State allows other student groups with a wide variety of ideological tenets and a wide variety of restrictions on membership and leadership to Wayne State resources to assemble on campus.

195.  Without recognized student group status, InterVarsity is denied important Wayne State resources to meet, share its message, and grow its membership that are available to all other student groups.

196.  Absent injunctive and declaratory relief, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT X

**42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the U.S. Constitution**
**Equal Protection**

197.  Plaintiffs incorporate by reference all preceding paragraphs.

198.  The Equal Protection Clause prohibits discrimination on the basis of religion.

199.  Wayne State's interpretation and application of its non-discrimination policy penalizes InterVarsity because of its religious beliefs by denying InterVarsity recognized status while allowing other religious and non-religious groups with leadership and membership qualifications to maintain recognized status.

200.  Organizations that espouse religious beliefs contrary to those espoused by InterVarsity are allowed to maintain recognized status.

201.  Wayne State's preference for one set of religious beliefs and against InterVarsity's religious beliefs violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

202.  Absent injunctive and declaratory relief, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XI

### Violation of the Higher Education Act (20 U.S.C. § 1011 (a))

203.  Plaintiffs incorporate by reference all preceding paragraphs.

204.  According to Section 1011 (a) of the Higher Education Act, "no student attending an institution of higher education . . . should, on the basis of participation in protected speech or protected association, be excluded from participation in, be denied the benefits of, or be subjected to discrimination or official sanction under any education program, activity, or division of the institution . . . whether or not such program, activity, or division is sponsored or officially sanctioned by the institution."

205.  InterVarsity's members are students attending an institution of higher education, and as such are members of the class for whose especial benefit this Act was enacted.

206.  There is evidence of legislative intent to create a private right to enforce this section of the Higher Education Act.

207.  Forcing InterVarsity to either comply with the non-discrimination policy as to InterVarsity's requirements for leadership in its group, or to lose recognized student group status, violates Section 1011 (a) of the Higher Education Act.

208.  Absent injunctive and declaratory relief against Wayne State's non-discrimination policy, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XII

### Violation of Section 37.2402 the Elliott-Larsen Civil Rights Act by the State of Michigan and Wayne State University
### (Against individual capacity defendants only)

209.  Plaintiffs incorporate by reference all preceding paragraphs.

33

210.    Section 37.2402 of the Elliott-Larsen Civil Rights Act declares that education institutions may not "discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex." M.C.L.A. 37.2402(a).

211.    Section 37.2402 also prohibits state universities from "Announc[ing] or follow[ing] a policy of denial or limitation through a quota or otherwise of educational opportunities of a group or its members because of religion, race, color, national origin, or sex." Mich. Comp. Laws Ann. § 37.2402(e).

212.    Wayne State has discriminated against InterVarsity, its leadership, and its members on account of their Statement of Faith, their religious beliefs, and their religious practices.

213.    Further, by derecognizing InterVarsity, Wayne State is denying InterVarsity, its leadership, and its members the ability to fully participate in University life on equal grounds with all other student groups.

214.    Wayne State has announced or followed a policy of limiting and denying educational opportunities for InterVarsity and its members based upon religion.

215.    Such denials constitute a violation of the Elliott-Larsen Civil Rights Act.

216.    Such denials violate clearly established law.

217.    Absent injunctive and declaratory relief on the grounds that Wayne State has violated the Elliott-Larsen Civil Rights Act, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XIII

**Violation of Section 37.2402 the Elliott-Larsen Civil Rights Act by Wayne State University (Against individual capacity defendants only)**

218.    Plaintiffs incorporate by reference all preceding paragraphs.

219.  Section 37.2701 of the Elliott-Larsen Civil Rights Act declares that persons shall not "Retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge," of a violation of this Act.  M.C.L.A. 37.2701.

220.  Wayne State fully derecognized InterVarsity only after it complained that Wayne State's actions were discriminatory under law. Prior to that time, InterVarsity enjoyed recognized student organization status even while its constitution was being disputed.

221.  These actions constitute retaliation in violation of the Elliott-Larsen Civil Rights Act.

222.  These actions violate clearly established law.

223.  Absent injunctive and declaratory relief on the grounds that Wayne State has violated the Elliott-Larsen Civil Rights Act, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XII

### Violation of Section 37.2302 the Elliott-Larsen Civil Rights Act
### (Against individual capacity defendants only)

224.  Plaintiffs incorporate by reference all preceding paragraphs.

225.  Section 37.2302 of the Elliott-Larsen Civil Rights Act makes it unlawful to "Deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion[.]" Mich. Comp. Laws Ann. § 37.2302.

226.  Section 37.2301 of the Elliott-Larsen Civil Rights Act defines public accommodations to include "an educational . . . facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public."

227. Wayne State is an educational institution which makes various goods, services, facilities, privileges, advantages, and accommodations available to the general public. Therefore it is a public accommodation under Michigan law.

228. By derecognizing InterVarsity, Wayne State has denied it and its members the full and equal enjoyment of goods, services, facilities, privileges, advantages and accommodation based upon its religion, religious beliefs, and religious practices.

229. Such denials constitute a violation of the Elliott-Larsen Civil Rights Act.

230. Such denials violate clearly established law.

231. Absent injunctive and declaratory relief on the grounds that Wayne State has violated the Elliott-Larsen Civil Rights Act, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XIII

### Violation of the Michigan Constitution Article I, § 4
### Freedom of Worship and Religious Belief Clause
### (Against individual capacity defendants only)

232. Plaintiffs incorporate by reference all preceding paragraphs.

233. Article I, § 4 of the Michigan Constitution provides that "[e]very person shall be at liberty to worship God according to the dictates of his own conscience." Furthermore, "The civil and political rights, privileges and capacities of no person shall be diminished or enlarged on account of his religious belief." *Id.*

234. InterVarsity's selection of leaders who share its religious beliefs is protected by the Michigan constitution's guarantee of religious freedom.

235. Denying InterVarsity recognized group status for selecting leaders who share its religious beliefs would substantially burden InterVarsity's religious freedom.

236. Forcing InterVarsity to have leaders who do not share its religious beliefs, or lose recognized student group status, is not be narrowly tailored to accomplishing a compelling government interest.

237. Forcing InterVarsity to have leaders who believe and act in direct contradiction to its religious beliefs, or lose recognized student group status, would violate the rights secured to them by Article I, § 4 of the Michigan Constitution.

238. These actions violate clearly established law.

239. Absent injunctive and declaratory relief against Defendants' enforcement of Wayne State's non-discrimination policy, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XIV

**Violation of the Michigan Constitution Article I, § 5**
**Compelled Speech**
**(Against individual capacity defendants only)**

240. Plaintiffs incorporate by reference all preceding paragraphs.

241. Article I, § 5 of the Michigan Constitution provides that "[e]very person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press."

242. Applying Wayne State's non-discrimination policy to InterVarsity would force it to accept leaders who do not share its religious beliefs.

243. This forced inclusion of leaders who do not share InterVarsity's religious beliefs and mission would communicate both to InterVarsity's own members as well as to the community at large that InterVarsity's beliefs are insincere and are different than what InterVarsity actually espouses.

244. Defendants' actions would thus violate InterVarsity's right to be free from compelled speech as secured to them by the First Amendment of the United States Constitution.

245. Compelling InterVarsity to convey messages that it disagrees with is not narrowly tailored to a compelling governmental interest.

246. These actions violate clearly established law.

247. Absent injunctive and declaratory relief against such compelled speech, InterVarsity and its members have been and will continue to be harmed.

## COUNT XVII

**Violation of the Michigan Constitution Article I, § 5
Viewpoint Discrimination
(Against individual capacity defendants only)**

248. Plaintiffs incorporate by reference all preceding paragraphs.

249. Governmental efforts to regulate speech based on the viewpoint of the speaker are impermissible viewpoint discrimination.

250. Wayne State seeks to apply its non-discrimination policy to penalize InterVarsity because of its religious opinions and perspectives.

251. Wayne State applies its non-discrimination policy in a manner that privileges the expression and views of groups that have different beliefs and perspectives.

252. Wayne State's preference for one set of opinions and perspectives and against InterVarsity's religious beliefs violates Article I, § 5 of the Michigan Constitution.

253. Discriminating against InterVarsity's expressed religious opinions and perspectives is not narrowly tailored to a compelling governmental interest.

254. These actions violate clearly established law.

255. Absent injunctive and declaratory relief against Wayne State, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XVIII

### Violation of the Michigan Constitution Article I, § 5
### Expressive Association
### (Against individual capacity defendants only)

256. Plaintiffs incorporate by reference all preceding paragraphs.

257. Applying Wayne State's non-discrimination policy to InterVarsity would compel it to select leaders who do not share or live out its religious beliefs.

258. InterVarsity is an association of like-minded Christians who seek to express their Christian faith through word and deed.

259. InterVarsity engages in expression and expressive activities as a group and believes that its activities and organization are a witness of its faith and thus inherently expressive.

260. Causing InterVarsity to accept leaders who do not share InterVarsity's religious beliefs would force the group to associate with and promote a message with which it disagrees and which runs contrary to the expressive purposes for which InterVarsity was created and operates.

261. Compelling InterVarsity to associate with and promote a message with which it disagrees and which runs contrary to the expressive purposes for which it was created and operates is not narrowly tailored to a compelling governmental interest.

262. Defendants' actions thus violate InterVarsity's right of expressive association as secured to it by Article I, Section 5 of the Michigan Constitution.

263. These actions violate clearly established law.

264. Absent injunctive and declaratory relief against Wayne State's non-discrimination policy, InterVarsity and its members have been and will continue to be irreparably harmed.

## COUNT XIX

**Violation of Article I, § 3 of the Michigan Constitution**
**Assembly Clause**
**(Against individual capacity defendants only)**

265.  Plaintiffs incorporate by reference all preceding paragraphs.

266.  Article I, § 3 of the Michigan Constitution provides that "[t]he people have the right peaceably to assemble, to consult for the common good, to instruct their representatives and to petition the government for redress of grievances."

267.  Wayne State infringes on InterVarsity's right of assembly in Article I, § 3 of the Michigan Constitution by denying InterVarsity recognized student group status because of its decision to require its leaders to share its religious beliefs.

268.  Without recognized student group status, InterVarsity is given second-class status and suffers many disadvantages which impede its ability to assemble on campus, communicate with the Wayne State community, and recruit new members.

269.  These actions violate clearly established law.

270.  Absent injunctive and declaratory relief against such compelled speech, InterVarsity and its members have been and will continue to be harmed.

## COUNT XX

**42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the U.S. Constitution**
**Due Process**

271.  Plaintiffs incorporate by reference all preceding paragraphs.

*272.*  By derecognizing InterVarsity, Wayne State has infringed on the group's Constitutional rights as laid out in the proceeding counts. *See Healy v. James,* 408 U.S. 169, 183,

(1972) (explaining "that denial of official recognition, without justification, to college organizations burdens or abridges" constitutional protections).

273.   The Due Process Clauses of the Fifth and Fourteenth Amendments guarantee that individuals and groups shall not be deprived of constitutional protections without "due process of law." That protection extends to student groups. *See Healy*, 408 U.S. at 177 (describing how a university was required to provide a student group "a hearing and opportunity to introduce evidence" before excluding them from campus); *Jaksa v. Regents of Univ. of Michigan*, 597 F. Supp. 1245, 1250 (E.D. Mich. 1984), *aff'd*, 787 F.2d 590 (6th Cir. 1986) ("[A] university cannot ignore its duty to treat its students fairly[.]").

274.   At a minimum, the Due Process Clause guarantees students and student groups a "meaningful" hearing that provides the opportunity to "respond, explain, and defend." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) (internal quotation marks omitted)

275.   Wayne State failed to provide InterVarsity notice concerning the basis for the revocation of recognized status. Likewise, InterVarsity was not provided with an opportunity to be heard, present evidence, or confront any accusers. Wayne State's conduct therefore falls short of even the most minimal protections of the Due Process Clause.

## PRAYER FOR RELIEF

Wherefore, InterVarsity requests that the Court:

   a.   Declare that the First and Fourteenth Amendments to the United States Constitution, the Higher Education Act, the Michigan Constitution, and the Michigan Civil Rights Act require Defendants to cease discriminating against InterVarsity and to cease withholding recognized status on the basis of InterVarsity's beliefs and leadership selection policies;

b.  Declare that the First Amendment to the United States Constitution and the Michigan Constitution protect InterVarsity's right to select religious leaders who share its faith, without government interference;

c.  Declare that Michigan state law may not be applied to InterVarsity in a manner that violates its rights under the United States Constitution;

d.  Issue a permanent injunction prohibiting enforcement of Wayne State's non-discrimination policy against InterVarsity based on InterVarsity's practice of selecting religious leaders who share its faith;

e.  Award InterVarsity nominal damages for the loss of their rights as protected by the United States and Michigan Constitutions;

f.  Award InterVarsity actual damages for the costs it has incurred as a result of the individual capacity Defendants' unlawful actions;

g.  Award InterVarsity the costs of this action and reasonable attorney's fees; and

h.  Award such other and further relief as the Court deems equitable and just.

## JURY REQUEST/DEMAND

Plaintiffs request a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Daniel P. Dalton
Daniel P. Dalton
Dalton & Tomich PLC
The Chrysler House
719 Griswold Street, Suite 270
Detroit, Michigan 48226
(313) 859-6000
(313) 859-8888
*ddalton@daltontomich.com*

Lori H. Windham*
Eric C. Rassbach*

42

Daniel H. Blomberg*
Daniel Ortner*
The Becket Fund for Religious Liberty
1200 New Hampshire Ave. NW, Suite 700
Washington, DC, 20036
(202) 955-0095 PHONE
(202) 955-0090 FAX
*lwindham@becketlaw.org*

***Counsel for Plaintiffs***

*\*W.D. Mich. admission pending*

# EXHIBIT A

**INTERVARSITY**
INTERVARSITY CHRISTIAN FELLOWSHIP/USA

**Tom Lin**
President

November 27, 2017

**BY EMAIL**

Dr. M. Roy Wilson
President, Wayne State University
656 W. Kirby
4200 Faculty/Administration Building
Detroit, MI 48202
president@

Re: Derecognition of InterVarsity Christian Fellowship student chapter

Dear Dr. Wilson,

I am writing to inform you about a serious problem and to ask for your assistance in resolving it. As you may know, the InterVarsity Christian Fellowship student chapter at Wayne State University (the "University" or "Wayne State") has been de-recognized by the Dean of Students' office because that office interprets the University's non-discrimination policy to forbid the chapter from asking its student leaders to share its faith. This decision came as a shock, since InterVarsity Christian Fellowship has been active at Wayne State for more than sixty years. As the President of InterVarsity, an international Christian student ministry organization, I am very concerned about this decision. It harms our group and the students we serve, and it raises significant legal problems—problems that Michigan's other public universities, such as the University of Michigan and Michigan State University, have wisely avoided. I am hopeful that we can find a solution that allows us to move forward together.

**Background on InterVarsity Christian Fellowship.** InterVarsity Christian Fellowship exists to build communities of students and faculty who follow Jesus as their Savior and Lord at colleges and universities worldwide. InterVarsity was founded in 1877 at the University of Cambridge, England. It was officially established in the United States in the late 1930's, with the first chapter formed nearby at the University of Michigan. Today, InterVarsity chapters are on more than 600 campuses nationwide serving more than 40,000 students and faculty.

The InterVarsity chapter at Wayne State has long been a part of our global community. The chapter has been active at Wayne State since at least the 1950s and—until being derecognized—held weekly Bible Studies, meetings, and service opportunities for University students. The InterVarsity chapter has long participated in the annual student organization fair, hosted weekly meetings, provided students with a sense of community, held discussions on important topics for the University community, and helped students succeed.

We also engaged the students to serve others, such as by serving at the W food pantry, helping to clean up and serve the community through the "Life Remodeled" program,

1

InterVarsity Christian Fellowship/USA, 635 Science Drive, P.O. Box 7895, Madison, WI 53707-7895  **phone:** 608.274.9001  **email:** info@intervarsity.org  **website:** intervarsity.org

hosting events to raise awareness of and support efforts to combat human trafficking, and hosting a campus prayer vigil and annual discussions centered around Christianity, race, and social justice.

We want to provide University students with a place of community, and we welcome everyone on campus, because that is part of our calling as Christians. Our student leaders are crucial in that effort, leading our students in Bible study, prayer, worship, and acts of service. Our student leaders model our faith commitment to serve everyone on campus. And to make sure that they can both live and express that commitment, we have always asked our leaders to share our faith.

**Background of the current situation.** Last school year, the University instituted a new online system for student organization approval. In the spring, the student president of InterVarsity's Wayne State chapter, Cristina Garza, submitted the chapter's constitution and the required information through the system. The constitution was essentially identical to those of other InterVarsity chapters that have been approved at, for instance, the University of Michigan and Michigan State University.[1] As with all of these constitutions, this constitution makes clear that InterVarsity welcomes all students, regardless of religious beliefs, to join. As is also true for all of these other constitutions, this constitution asked that InterVarsity's student leadership embrace our religious mission.

Ms. Garza received a preliminary approval, and then shortly before the end of the year, received a message stating that the constitution did not meet the necessary requirements. InterVarsity experienced no adverse consequences as a result of this message, and continued to reserve rooms and host tables through September and October 2017. But on October 3, 2017, Ms. Garza received another message stating that InterVarsity's constitution was not approved. She contacted the Dean of Students Office and spoke with Ricardo Villarosa, who informed her that the constitution's requirements that leaders share the chapter's faith were inconsistent with the school's non-discrimination policy. Mr. Villarosa seemed to suggest that other campus organizations such as single-sex fraternities and sororities stated in their constitutions that leadership positions were open to all, even though they disregarded that rule in practice.

On Oct. 17, Ms. Garza asked Mr. Villarosa for clarification on this decision and noted that denying the group's identity to ensure its leadership shared its faith seemed to raise issues of religious freedom. On Oct. 23, the University responded with the attached letter from Sarah Luke, stating that requiring Intervarsity to accept

---

[1]   *See* Maize Pages, University of Michigan, *InterVarsity Christian Fellowship (Multi-Ethnic),* https://maizepages.umich.edu/organization/ivme (listing InterVarsity as a recognized student group); *see also* Community, Michigan State University, *Intervarsity Christian Fellowship,* https://michiganstate-community.symplicity.com/index.php?tab=documents (listing InterVarsity as a recognized student group, and providing a copy of the chapter's approved constitution, which includes the same leadership requirement language rejected by Wayne State).

nonreligious leadership was constitutional because "the policy is viewpoint neutral and is applied equally to all organizations seeking recognition."

On Oct. 26, the University confirmed that it had derecognized InterVarsity as a student organization. The University cancelled all of Intervarsity's meeting-space reservations.

Intervarsity has since been unable to reserve free meeting rooms, host tables for interested students, use campus bulletin boards and TV monitors for advertising, apply for funding available to recognized student groups, or receive any other benefits granted to other recognized student groups. To continue its decades-long practice of serving its members and the University community, InterVarsity has been renting space at the University at its own expense.

**Legal concerns.** The University's decision to exclude InterVarsity does not make sense. Nor is it required by the University's student organization policy. If anything, the decision is in direct conflict with that policy. It is also in direct conflict with the more inclusive practices at schools like the University of Michigan and Michigan State University. Finally, the decision appears to violate state and federal law.

*First,* Intervarsity disagrees that it is "discrimination" for a religious group to ask its leadership to believe in the God we pray to, worship, and serve. Student leaders are the ones leading students in Bible study, prayer, worship, and service. Asking them to believe in what they're teaching and doing is a matter of basic integrity, both for our leaders and for our group. And as a matter of fundamental academic freedom and true campus diversity, it makes no sense to demand that student groups abandon their mission and distinctive identity by ceding control to leaders who share neither. Protecting freedom and diversity of thought requires leaving space for authentic differences, not reducing them to conformity.

In practice, it appears the University is willing to respect distinctiveness for myriad other campus groups. For instance, notwithstanding the University's laudable commitment not to *itself* discriminate based on veteran status, race, color, or national origin, surely the University does not in practice actually force its nationally affiliated fraternities and sororities to violate their national charters by admitting members of the opposite sex.[2] Indeed, at about the same time that the University was taking action against Intervarsity for merely asking that its *leaders* share its faith, the University was advertising a new fraternity whose *membership* was for "like-minded men." *See* https://orgsync.com/143522/news_posts/243086. Nor does the University appear to require the Goddess Experience student group to select male

---

[2]   *See, e.g.,* Alpha Kappa Alpha Sorority, https://orgsync.com/156246/chapter (University chapter page), http://aka1908.com/membership/aspiring-or-prospective-members (National page, noting that "[f]ederal law recognizes the right of college fraternities and sororities to maintain single sex membership policies" and "[c]onsistent with that right, Alpha Kappa Alpha Sorority, Incorporated is a women's organization is a women's organization's and membership is open to women").

leaders; nor the International Youth and Students for Social Equality to accept veterans of "imperialist war"; nor the Secular Student Alliance to promote religious leaders who reject their secular values.[3]

Similarly, I doubt that the University applies its non-discrimination policy to its *own* activities. For instance, the policy bans the University—in "all" of its activities—from discriminating on the basis of sex, height, or weight. But surely the men's football team discriminates on the basis of sex, and the basketball teams on the basis of height, and many (perhaps all) of the athletic teams on the basis of weight. There are surely many other examples.

To be clear, we respect and support the University's commitment to diversity for student groups, and appreciate the way it has accommodated the unique needs and differences of other groups. *See, e.g.,* http://www.wsumsa.com/prayer (stating that the University maintains a gender-segregated prayer room to accommodate minority faiths). We simply believe part of true diversity must include space for the viewpoints expressed by religious student groups of all faiths, including ours. And any policy should not be selectively enforced against us.

*Second,* it is not clear that the University's written policy applies to student groups. The policy states that the University *itself* will not discriminate in "its operations, employment opportunities, educational programs, and related activities." But nowhere does it state that this policy must extend to private student organizations granted recognized status. At minimum, this unclear language creates uncertainty and the risk of arbitrary enforcement.

Moreover, the University's policy prohibits religious discrimination, and states that it "forbids retaliation and/or any form of harassment against an individual as a result of filing a complaint of discrimination or harassment, or participating in an investigation of a complaint of discrimination or harassment." Yet the University waited to terminate InterVarsity's student organization status until Ms. Garza raised the issue of religious discrimination with the Dean of Students office. It appears that the University, and not InterVarsity, is acting in violation of the policy.

*Finally,* it is my understanding that the University's current policy interpretation is illegal. The federal Court of Appeals for the Sixth Circuit recently upheld InterVarsity's First Amendment right to select religious leaders that share its faith, emphasizing that "the historical practice has always been that the government cannot dictate to a religious organization who its spiritual leaders would be." *Conlon v. InterVarsity Christian Fellowship,* 777 F.3d 829, 835-36 (6th Cir. 2015). The court

---

[3]   *See* The Goddess Experience OrgSync Page, https://orgsync.com/162968/chapter ("The Goddess Experience is a way for women to awaken the greatness they carry within. The goal of this organization is to help women[.]"); *see also* IYSSE OrgSync Page, https://orgsync.com/148037/chapter ("We are a student organization dedicated to . . . opposition to imperialist war and the capitalist system"); *see also* Secular Student Alliance OrgSync Page, https://orgsync.com/162464/chapter ("The purpose of the Secular Student Alliance is to promote secular values" and it strives to "remove certain stigmas [regarding] secular beliefs.").

explained that "[t]his constitutional protection is not only a personal one; it is a structural one that categorically prohibits federal and state governments from becoming involved in religious leadership disputes." *Id.* at 836. While that ruling concerned InterVarsity employees, it is no less relevant to attempts by state-run universities to control the religious leadership of InterVarsity's private student groups.

Thus, for instance, the Seventh Circuit struck down under the First Amendment a public university's policy that prevented the religious student group from asking its "voting members and officers . . . [to] subscribe to the statement of faith." *Christian Legal Society v. Walker*, 453 F.3d 853, 858 (7th Cir. 2006). The court held that there is "no clearer example" of unconstitutional governmental "intrusion into the internal structure or affairs of an association" than controlling its leadership. *Id.* at 861.

Nor does it matter that the University has framed its intrusion into InterVarsity's leadership selection as demanded by its nondiscrimination policy. The Supreme Court's unanimous decision in *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC* recognized that enforcing "nondiscrimination statutes is undoubtedly important," but that the First Amendment had "struck the balance" in favor of protecting "the interest of religious groups in choosing who will preach their beliefs, teach their faith, and carry out their mission." 565 U.S. 171, 196 (2012). Indeed, in that case the Supreme Court held that Michigan state anti-discrimination laws had to give way to the strictures of the First Amendment. 565 U.S. at 180.

Importantly, these and other related First Amendment protections are particularly applicable "in the community of American universities." *Dube v. State University of New York*, 900 F.2d 587, 597-98 (2d Cir. 1990). In the context of higher education, the First Amendment rejects "any strait jacket" that "'cast[s] a pall of orthodoxy' over the free exchange of ideas." *Id.* (quoting *Sweezy v. New Hampshire*, 354 U.S. 237, 250 (1957), and *Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967), and finding that university officials could be personally liable for damages for censoring free speech)

**Moving forward.** On behalf of InterVarsity, I am writing you in the hope that we can resolve this problem together. InterVarsity has been a part of the University's student body for more than sixty years and is filled with students who want to continue serving their campus. I am sure you agree with me that the University should not discriminate against students who choose to participate in InterVarsity. If anything, the University should be *encouraging* active, community-serving student groups like InterVarsity, not excluding them. Therefore, I respectfully request that the University immediately reinstate InterVarsity's recognition and that our representatives meet to discuss how the University and InterVarsity can work together going forward. Please let me know when we might have such a meeting. We will hold off on further legal action until December 8.

Sincerely,

Tom Lin
President
InterVarsity Christian Fellowship/USA

cc:    Dr. David Straus, Dean of Students, davidstrauss@█████
        Sarah Luke, Assistant General Counsel, sarah.luke@█████
        Ricardo Villarosa, Student Life Coordinator, ricardo.villarosa@█████

# EXHIBIT B

**From:** Louis Lessem [mailto:louis.lessem@███████]
**Sent:** Thursday, December 14, 2017 4:01 PM
**To:** President Tom Lin <tomlin@███████>
**Subject:** RE: Derecognition of InterVarsity Christian Fellowship Student Chapter

Thank you for your note.

Having given considerable thought to this, it seems to me that this is, or should be a solvable problem. There are a number of potential options that have been suggested to me that would allow each of us to achieve our respective needs – nobody is interested in damaging Intervarsity fellowship.

To resolve this issue, we must decide to do so. I am not sure if you are available in Detroit, but if not, perhaps we might each designate someone to discuss how to resolve this in an amicable way before either of us is compelled to take aggressive measures.

At Wayne, there is a modest drop off in student attendance between fall and winter semesters. few students come to way for the first time in winter term. if there are concentrated recruiting events held in January or February, I am not aware of them. I believe the next opportunity for student organizations to recruit new members is more than half a year hence. There is time and then some to attempt to reach a mutually amicable arrangement.

I shall look forward to hearing from you at your convenience.

Sincerely,

Louis Lessem

**From:** President Tom Lin [mailto:tomlin@███████]
**Sent:** Thursday, December 14, 2017 10:40 AM
**To:** Louis Lessem <louis.lessem@███████>
**Subject:** Re: Derecognition of InterVarsity Christian Fellowship Student Chapter

Dear Mr. Lessem,

Thank you for your letter, which we received on Dec. 4. Unfortunately, the letter did not resolve the university's decision to derecognize the Wayne State InterVarsity chapter simply because we ask chapter leaders to embrace our core faith commitments. Nor did we receive an answer from Wayne State by Dec. 8, which I had asked for in my Nov. 29 letter. As you know, being derecognized is damaging and stigmatizing for both student groups and for the Wayne State students who lead and participate in them. We are particularly concerned that unless we hear from Wayne State soon, the chapter will not be able to participate in next semester's recruiting events for student groups. We urgently request that Wayne State answer my letter by Dec. 15. If we do not hear from you by then, we will be required to consider immediate legal action.

InterVarsity has been a fixture at Wayne State for over half a century. We look forward to being able to resume serving Wayne State students as soon as possible.

Sincerely,
Tom Lin